MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CEFERINO ADONIAS (AKA STEVEN
DIAZ), GERMAN MERCENARIO
VELAZQUEZ, ANTONIO ARANDA and
HERMENEGILDO MERCENARIO
VELAZQUEZ, *individually and on behalf of
others similarly situated,*

|  |  |
|---|---|
|  | **COMPLAINT** |
| *Plaintiffs*, | **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** |
| -against- | **ECF Case** |

AL HORNO LEAN MEXICAN KITCHEN
INC. (d/b/a AL HORNO LEAN MEXICAN
KITCHEN), AL HORNO LEAN MEXICAN
57, INC. (d/b/a AL HORNO LEAN
MEXICAN KITCHEN) and CHRIS
PIZZIMENTI,

                    *Defendants.*
--------------------------------------------------------X


        Plaintiffs Ceferino Adonias (AKA Steven Diaz), German MercenarioVelazquez, Antonio

Aranda and Hermenegildo Mercenario Velazquez, individually and on behalf of others similarly

situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace &

Associates, P.C., upon their knowledge and belief, and as against Al Horno Lean Mexican

Kitchen Inc. (d/b/a Al Horno Lean Mexican Kitchen), Al Horno Lean Mexican 57, Inc. (d/b/a Al

Horno Lean Mexican Kitchen), together "Defendant Corporations") and Chris Pizzimenti, allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs are former employees of defendants Al Horno Lean Mexican Kitchen Inc. (d/b/a Al Horno Lean Mexican Kitchen) and Al Horno Lean Mexican 57, Inc. (d/b/a Al Horno Lean Mexican Kitchen) and Chris Pizzimenti (collectively "Defendants").

2.    Defendants own, operate, or control two Mexican restaurants located at 417 West 47th Street, New York, New York 10036 ("47th Street location") and at 1089 Second Avenue, New York, New York, 10022 ("Second Avenue location") both under the name Al Horno Lean Mexican Kitchen.

3.    Upon information and belief, individual defendant Chris Pizzimenti serves or served as owner, manager, principal, or agent of Defendant Corporations and, through these corporate entities, operates or operated the restaurants as joint or unified enterprises.

4.    Plaintiffs were primarily employed as delivery workers, but prior to January 2016, they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to stocking the cook's station with food, twisting and tying up cardboard boxes, sweeping and mopping the basement and customer area, carrying down and stocking deliveries in the basement, bringing sodas upstairs and refilling the refrigerator, cleaning the bathroom, bar, hallway, dining area, windows and sidewalk, taking out the garbage, cleaning the refrigerator and refilling it with sodas and food, setting up chairs and dishwashing (hereafter the "non-tipped, non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required a significant amount of time spent in non-tipped, non-delivery duties.

9.      Regardless, prior to approximately July 2014, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

10.     In addition, under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs a lower tip-credited rate, and they still failed to pay it prior to July 2014.

12.     Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

- 3 -

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district,

Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two Mexican restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

19.     Plaintiff Ceferino Adonias (AKA Steven Diaz) ("Plaintiff Adonias" or "Mr. Adonias ") is an adult individual residing in Bronx County, New York.  Plaintiff Adonias was employed by Defendants from approximately May 2014 until on or about August 2016 at the 47th Street location.

20.     Plaintiff German MercenarioVelazquez ("Plaintiff Velazquez " or "Mr. Velazquez ") is an adult individual residing in New York, New York. Plaintiff Velazquez was employed by Defendants from approximately May 2014 until on or about June 2014 and from approximately May 2015 until on or about August 2016 at the 47th Street location and covered for missing employees at the Second Avenue location.

21.     Plaintiff Antonio Aranda ("Plaintiff Aranda" or "Mr. Aranda") is an adult individual residing in New York County, New York. Plaintiff Aranda was employed by Defendants from approximately June 2013 until on or about August 2016 at the 47th Street location.

22.     Plaintiff Hermenegildo Mercenario Velazquez ("Plaintiff Mercenario " or "Mr. Mercenario ") is an adult individual residing in New York County, New York. Plaintiff Mercenario was employed by Defendants from approximately June 2014 until on or about August 2016 at both the 47th Street and Second Avenue locations.

*Defendants*

- 5 -

23.     At all relevant times, Defendants own, operate, or control two Mexican restaurants located at 417 West 47th Street, New York, New York 10036 ("47th Street location") and at 1089 Second Avenue, New York, New York, 10022 ("Second Avenue location") under the name "Al Horno Lean Mexican Kitchen".

24.     Upon information and belief, Al Horno Lean Mexican Kitchen Inc. is a domestic corporation organized and existing under the laws of the State of New York.

25.     Upon information and belief, it maintains its principal place of business at 417 West 47th Street, New York, New York 10036.

26.     Upon information and belief, Al Horno Lean Mexican 57, Inc. is a domestic corporation organized and existing under the laws of the State of New York.

27.     Upon information and belief, it maintains its principal place of business at 1089 Second Avenue, New York, New York, 10022.

28.     Defendant Chris Pizzimenti is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Chris Pizzimenti is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Chris Pizzimenti possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

29.     Defendants operate two Mexican restaurants located in the Midtown West and Midtown East sections of Manhattan in New York City.

30.     The individual defendant Chris Pizzimenti, possesses operational control over Defendant Corporations, possesses ownership interests in Defendant Corporations, and controls significant functions of Defendant Corporations.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, individual defendant Chris Pizzimenti operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a.   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations,

b.   defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c.   transferring assets and debts freely as between all Defendants,

d.   operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e.   operating Defendant Corporations for his own benefit and maintaining control over them as closed corporations,

f.   intermingling assets and debts of his own with Defendant Corporations,

g.   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h.   other actions evincing a failure to adhere to the corporate form.

36.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.   In each year from 2013 to August 2016, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. As an example, numerous items that were used in both restaurants on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

39.    Plaintiffs are former employees of Defendants who were ostensibly employed as delivery workers. However, they spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

40.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Ceferino Adonias (aka Steven Diaz)*

41.    Plaintiff Adonias was employed by Defendants from approximately May 2014 until on or about August 2016 at the 47th Street location.

42.    Defendants ostensibly employed Plaintiff Adonias as a delivery worker.

43.    However, Plaintiff Adonias was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

44.    Although Plaintiff Adonias was ostensibly employed as a delivery worker, he spent over twenty percent of the time worked each day performing non-delivery work throughout his employment with Defendants.

45.    Plaintiff Adonias regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Adonias' work duties required neither discretion nor independent judgment.

47.     From approximately May 2014 until on or about November 2014, Plaintiff Adonias worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. Sundays through Fridays (typically 48 hours per week).

48.     From approximately November 2014 until on or about January 2016, Plaintiff Adonias worked from approximately 11:00 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. Mondays through Fridays and from approximately 4:00 p.m. until on or about 10:00 p.m. on Saturdays (typically 46 hours per week).

49.     From approximately May 2014 until on or about July 2014, Plaintiff Adonias was paid his wages in cash.

50.     From approximately July 2014 until on or about January 2016, Plaintiff Adonias was paid his wages by personal check.

51.     From approximately May 2014 until on or about July 2014, Defendants paid Plaintiff Adonias $5.00 per hour.

52.     From approximately July 2014 until on or about January 2016, Defendants paid Plaintiff Adonias $5.65 per hour.

53.     Defendants never granted Plaintiff Adonias any break or meal period of any kind.

54.     Plaintiff Adonias was never notified by Defendants that his tips were being included as an offset for wages.

55.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Adonias' wages.

56.     In addition, Defendants withheld a percentage of the tips customers wrote in for Plaintiff Adonias.

57.     Prior to approximately September 2014, Plaintiff Adonias was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

58.     Furthermore, prior to January 2016, Defendants did not provide Plaintiff Adonias with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

59.     No notification, either in the form of posted notices or other means, was given to Plaintiff Adonias regarding overtime and wages under the FLSA and NYLL.

60.     Defendants did not give any notice to Plaintiff Adonias, in English and in Spanish (Plaintiff Adonias' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

61.     Defendants required Plaintiff Adonias to purchase "tools of the trade" with his own funds—including three bicycles, a helmet, bicycle lights, a vest, and a bike chain.

*Plaintiff German Mercenario Velazquez*

62.     Plaintiff Velazquez was employed by Defendants from approximately May 2014 until on or about June 2014 and from approximately May 2015 until on or about August 2016 at the 47th Street location and covered for missing employees at the Second Avenue location.

63.     Defendants ostensibly employed Plaintiff Velazquez as a delivery worker.

64.     However, Plaintiff Velazquez  was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

65.     Although Plaintiff Velazquez was ostensibly employed as a delivery worker, he spent over twenty percent of the time worked each day performing non-delivery work throughout his employment with Defendants.

66.     Plaintiff Velazquez  regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

67.     Plaintiff Velazquez's work duties required neither discretion nor independent judgment.

68.     From approximately May 2014 until on or about June 2014, Plaintiff Velazquez worked from approximately 10:00 a.m. until on or about 3:30  p.m. Mondays through Sundays (typically 38.5 hours per week).

69.     From approximately May 2015 until on or about January 2016, Plaintiff Velazquez worked from approximately 10:00 a.m. until on or about 10:00 p.m. three days a week and from approximately 10:00 a.m. until on or about 10:30 p.m. three days a week (typically 61.5 hours per week).

70.     From approximately May 2014 until on or about June 2014, Plaintiff Velazquez was paid his wages in cash.

71.     From approximately May 2015 until on or about January 2016, Plaintiff Velazquez was paid his wages by personal check.

72.     From approximately May 2014 until on or about June 2014, Defendants paid Plaintiff Velazquez $5.00 per hour.

73.     From approximately May 2015 until on or about January 2016, Defendants paid Plaintiff Velasquez $5.65 per hour.

74.     Defendants never granted Plaintiff Velazquez any break or meal period of any kind.

75.     Plaintiff Velazquez was never notified by Defendants that his tips were being included as an offset for wages.

76.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Velazquez's wages.

77.     In addition, defendants withheld a percentage of the tips customers wrote in for Plaintiff Velazquez.

78.     From approximately May 2014 until on or about June 2014, Plaintiff Velazquez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

79.     Furthermore, prior to January 2016, Defendants did not provide Plaintiff Velazquez with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

80.     No notification, either in the form of posted notices or other means, was given  to Plaintiff Velazquez  regarding overtime and wages under the FLSA and NYLL.

81.     Defendants did not give any notice to Plaintiff Velazquez, in English and in Spanish (Plaintiff Velazquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

82.     Defendants required Plaintiff Velazquez to purchase "tools of the trade" with his own funds—including two bicycles, a vest, bicycle lights, a lock and chain, a helmet and additional costs for bicycle repairs and maintenance.

*Plaintiff Antonio Aranda*

83.     Plaintiff Aranda was employed by Defendants from approximately June 2013 until on or about August 2016 at the 47th Street location.

84.     Defendants ostensibly employed Plaintiff Aranda as a delivery worker.

85.     However, Plaintiff Aranda was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

86.     Although Plaintiff Aranda was ostensibly employed as a delivery worker, he spent over twenty percent of each day performing non-delivery work throughout his employment with Defendants.

87.     Plaintiff Aranda regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

88.     Plaintiff Aranda's work duties required neither discretion nor independent judgment.

89.     Throughout his employment with Defendants, Plaintiff Aranda regularly worked in excess of 40 hours per week.

90.     From approximately June 2013 until on or about January 2016, Plaintiff Aranda worked from approximately 9:00 a.m. until on or about 3:00 p.m. and from approximately 6:00 p.m. until on or about 10:00 p.m. or 10:30 p.m. Mondays through Fridays and from approximately 10:00 a.m. until on or about 10:00 p.m. on Sundays (typically 63.25 hours per week).

91.     From approximately June 2013 until on or about July 2014, Plaintiff Aranda was paid in cash.

92.     From approximately July 2014 until on or about January 2016, Plaintiff Aranda was paid his wages by personal check.

93.     From approximately June 2013 until on or about July 2014, Defendants paid Plaintiff Aranda $5.00 per hour.

94.     From approximately July 2014 until on or about January 2016, Defendants paid

Plaintiff Aranda $5.65 per hour.

95.    Defendants never granted Plaintiff Aranda any break or meal period of any kind.

96.    Plaintiff Aranda's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

97.    In fact, Defendants regularly required Plaintiff Aranda to work up to 30 minutes past his departure time and did not pay him appropriately for the extra time he worked.

98.    Plaintiff Aranda was never notified by Defendants that his tips were being included as an offset for wages.

99.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Aranda's wages.

100.    In addition, defendants withheld a percentage of the tips customers wrote in for Plaintiff Aranda.

101.    Prior to approximately September 2014, Plaintiff Aranda was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

102.    Furthermore, prior to January 2016, Defendants did not provide Plaintiff Aranda with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

103.    No notification, either in the form of posted notices or other means, was given to Plaintiff Aranda regarding overtime and wages under the FLSA and NYLL.

104.    Defendants did not give any notice to Plaintiff Aranda , in English and in Spanish (Plaintiff Aranda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

105.    Defendants required Plaintiff Aranda to purchase "tools of the trade" with his own

funds—including two bicycles, a safety vest, two sets of locks and chains and two helmets.

*Plaintiff Hermenegildo Mercenario Velazquez*

106.     Plaintiff Mercenario was employed by Defendants from approximately June 2014 until on or about August 2016 at both the 47th Street and Second Avenue locations.

107.     Defendants ostensibly employed Plaintiff Mercenario as a delivery worker.

108.     However, Plaintiff Mercenario was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

109.     Although Plaintiff Mercenario was ostensibly employed as a delivery worker, he spent over twenty percent of the hours worked each day performing non-delivery work throughout his employment with Defendants.

110.     Plaintiff Mercenario regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

111.     Plaintiff Mercenario's work duties required neither discretion nor independent judgment.

112.     From approximately June 2014 until on or about September 2014, Plaintiff Mercenario worked at the 47th Street location from approximately 9:00 a.m. until on or about 3:00 p.m. or 3:30 p.m. Mondays through Fridays (typically 30 to 32.5 hours per week).

113.     From approximately September 2014 until on or about January 2016, Plaintiff Mercenario worked at both the 47th Street and the Second Avenue locations from approximately 7:00 a.m. until on or about 2:00 p.m. or 2:30 p.m. Mondays through Fridays (typically 35 to 37.5 hours per week).

114.     From approximately June 2014 until on or about July 2014, Plaintiff Mercenario was paid his wages in cash.

115.     From approximately July 2014 until on or about January 2016, Plaintiff Mercenario was paid his wages by personal check.

116.     From approximately June 2014 until on or about July 2014, Defendants paid Plaintiff Mercenario $5.00 per hour.

117.     From approximately July 2014 until on or about January 2016, Defendants paid Plaintiff Mercenario $5.65 per hour.

118.     Plaintiff Mercenario's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

119.     Defendants regularly required Plaintiff Mercenario to work an additional 15 to 30 minutes past his scheduled departure time, and did not compensate him for the extra time he worked.

120.     Defendants never granted Plaintiff Mercenario  any break or meal period of any kind.

121.     Plaintiff Mercenario  was never notified by Defendants that his tips were being included as an offset for wages.

122.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mercenario's   wages.

123.     In addition, defendants withheld a percentage of the tips customers wrote in for Plaintiff Mercenario.

124.     Prior to approximately September 2014, Plaintiff Mercenario was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards or sign in sheets, that accurately reflected his actual hours worked.

125.     Furthermore, prior to January 2016, Defendants did not provide Plaintiff

Mercenario with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

126.    No notification, either in the form of posted notices or other means, was given  to Plaintiff Mercenario  regarding overtime and wages under the FLSA and NYLL.

127.    Defendants did not give any notice to Plaintiff Mercenario, in English and in Spanish (Plaintiff Mercenario's   primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

128.    Defendants required Plaintiff Mercenario to purchase "tools of the trade" with his own funds—including four vests and additional costs for bicycle repairs.

*Defendants' General Employment Practices*

130.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

131.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

132.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

133.    Defendants habitually required some Plaintiffs to work additional time beyond their regular shifts but did not provide them with any additional compensation.

134.    Prior to January 2016, defendants required Plaintiffs to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

135.    Prior to January 2016, Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

136.    Prior to approximately July 2014, Plaintiffs were paid at a rate that was below the tip-credit rate required by NYLL.

137.    In addition, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday. 12 N.Y. C.R.R. § 146.

138.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

139.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped, non-delivery duties described above.

140.    In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees but (prior to July 2014) did not even pay them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

- 19 -

141.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

142.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

143.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

144.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.  This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

145.    Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

146.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

147.    Prior to January 2016, Plaintiffs were paid their wages in either cash or by personal check.

148.    Prior to approximately September 2014, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

149.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

150.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

151.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

152.    Defendants employed Plaintiffs as tipped workers and required them to provide their own tools for the job, and refused to compensate them or reimburse them for these expenses.

153.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

154.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

155.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

156.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

157.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

158.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them minimum wage and  overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

159.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

160.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

161.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

163.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

164.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

165.     In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the applicable minimum hourly rate.

166.     Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

167.     Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

168.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

170.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

171.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

174.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

175.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

176.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW)

177.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime

compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

179.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

180.   Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

181.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

182.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6(a).

183.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

184.   Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

185.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

186.   Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if

any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

187.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW)

188.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

189.     With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

190.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

191.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

192.     Defendants required Plaintiffs to pay, without reimbursement, the costs and

expenses for purchasing and maintaining equipment and "tools of the trade" required to perform

their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29

U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

193.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION OF THE NEW YORK LABOR LAW)

194.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.    At all relevant times, Defendants were Plaintiffs' employers within the meaning

of the N.Y. Lab. Law §§ 2 and 651.

196.    New York State Labor Law § 196-d prohibits any employer or his agents,

including owners and managers, from demanding or accepting, directly or indirectly, any part of

the gratuities received by an employee, or retaining any part of a gratuity, or any charge

purported to be a gratuity, for an employee.

197.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were

received from customers.

198.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in

violations of the NYLL and supporting Department of Labor Regulations.

199.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)      Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        September 16, 2016

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
         Michael Faillace [MF-8436]
         MICHAEL FAILLACE & ASSOCIATES, P.C.
         Michael A. Faillace [MF-8436]
         60 East 42nd Street, suite 2540
         New York, New York 10165
         Telephone: (212) 317-1200
         Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Antonio Aranda

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          01 de julio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

July 1, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Ceferino Adonias

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              01 de julio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 1, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    German Mercenario Velazquez

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    01 de julio de 2016

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 1, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Hermenegildo Mercenario Velazquez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     01 de julio de 2016

_Certified as a minority-owned business in the State of New York_