UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

CEFERINO ADONIAS, a/k/a STEVEN
DIAZ, individually and on behalf of others
similarly situated, GERMAN MERCENARIO
VELAZQUEZ, individually and on behalf of
others similarly situated, ANTONIO
ARANDA, individually and on behalf of
others similarly situated, HERMENEGILDO
MERCENARIO VELAZQUEZ, individually
and on behalf of others similarly situated,

        Plaintiffs,

    -v-                              No.  16-CV-07266-LTS-KHP

AL HORNO LEAN MEXICAN KITCHEN
INC. d/b/a AL HORNO LEAN MEXICAN
KITCHEN, AL HORNO LEAN MEXICAN
57, INC., d/b/a AL HORNO LEAN
MEXICAN KITCHEN, and CHRIS
PIZZIMENTI,

        Defendants.

---------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

      Plaintiffs Ceferino Adonias, also known as Ceferino Adonias Pacheco[1] and

Steven Diaz ("Adonias"), German Mercenario Velazquez ("G. Mercenario"), Antonio Aranda

("Aranda"), and Hermenegildo Mercenario Velazquez ("H. Mercenario," and collectively,

"Plaintiffs"), bring this action individually and on behalf of others similarly situated against Al

Horno Lean Mexican Kitchen Inc. and Al Horno Lean Mexican 57, Inc. ("Al Horno" or the

"Restaurant") and Chris Pizzimenti ("Pizzimenti," and collectively, "Defendants"), asserting

---

[1]      Adonias indicated at trial that he preferred to be addressed as "Pacheco."  (Trial Tr.
163:20-21.)  In this Memorandum and Order, the Court will, however, refer to him as
"Adonias," the name reflected in the pleadings and on the ECF docket.

claims for wage-and-hour and recordkeeping violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA"), the New York Labor Law, §§ 190-199A, 650-665 (the "NYLL"), and the federal and state rules and regulations promulgated thereunder (the Code of Federal Regulations, or "CFR," and the New York Codes, Rules and Regulations, or "NYCRR"). Specifically, Plaintiffs seek to recover (i) unpaid minimum and overtime wages, (ii) spread of hours ("SOH") damages, (iii) damages for failure to provide an annual notice of wage rate, (iv) damages for failure to provide wage statements, (v) equipment reimbursement, (vi) withheld tips, (vii) liquidated damages, and (viii) costs and reasonable attorneys' fees, as well as (ix) prejudgment interest at the rate of nine percent per annum on their NYLL minimum wage, overtime, and SOH damages.

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367(a), and 29 U.S.C. § 216(b).

Plaintiffs filed their Complaint on September 16, 2016, and the Court conducted a three-day bench trial beginning on January 22, 2018. Following the bench trial, the Defendants submitted revised proposed findings of fact and conclusions of law on February 14, 2018, and Plaintiffs submitted their revised proposed findings of fact and conclusions of law on February 23, 2018. (Docket Entry Nos. 50 and 53.)

The Court observed carefully the demeanor and testimony of the witnesses and has considered carefully the parties' submissions and arguments as well as the trial record. In accordance with Federal Rule of Civil Procedure 52(a), this Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law. To the extent any finding of fact includes conclusions of law, it is deemed a conclusion of law and vice versa.

For the following reasons, the Court finds that Plaintiffs are entitled to recover (i) based on violations of the FLSA and NYLL's minimum wage and overtime provisions (the First through Fourth Causes of Action), (ii) based on violations of the NYLL's notice and recordkeeping and wage statement provisions (the Sixth and Seventh Causes of Action), and (iii) certain of their claimed equipment costs (the Eighth Cause of Action).

FINDINGS OF FACT

The Court finds that the following facts have been proven by a preponderance of the credible evidence. At all relevant times, Pizzimenti and Al Horno operated two Mexican restaurants under the name "Al Horno Lean Mexican Kitchen," at 417 West 47th Street, New York, New York (the "47th Street Restaurant"), and 1089 Second Avenue, New York, New York (the "Second Avenue Restaurant"). Defendants are employers and a covered enterprise for purposes of the FLSA and the NYLL, and the employees at both locations of Al Horno Lean Mexican Kitchen regularly used ingredients and other items that had traveled or were produced in interstate commerce.

Each Plaintiff is a former delivery employee who received wages from Defendants and tips from customers. Adonias, who was also known as Marco Steven Diaz, worked for the Defendants from May 15, 2014, until August 2016. (Trial Tr. 164:2-16; Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law ("Pls. Rev. FF & CL"), Docket Entry No. 53, Exhibit 1.) G. Mercenario worked for Defendants for two separate periods: first, from May 15, 2014, until June 30, 2014, and again from February 14, 2015, until early July 2016. (Trial Tr. 104:10-105:7; Pls. Rev. FF & CL, Exhibit 1.) Aranda worked for Defendants from June 15, 2014, until September 2016. (Trial Tr. 218:16-17, 219:1-4; Pls. Rev.

FF & CL, Exhibit 1.)  H. Mercenario worked for Al Horno from June 17, 2014, until July 2016. (Pls. Rev. FF & CL, ¶¶ 113-14; Trial Tr. 19:6-9.)

Overtime and Minimum Wage Claims

Plaintiffs claim that Defendants improperly applied a tip credit to their minimum and overtime wages.  (Pls. Rev. FF & CL, ¶¶ 18-26, 51-60, 89-99, 123-30.)  According to Plaintiffs, Defendants' tip credit was improper because (i) Plaintiffs spent more than 20 percent of their shift working on non-tipped tasks in violation of the "80/20 Rule," and (ii) Defendants failed to provide notice of their intention to apply a tip credit to Plaintiffs' wages.  (Pls. Rev. FF & CL, ¶¶ 177, 179-80.[2])

*80/20 Rule*

Plaintiffs claim that they spent more than 20 percent of their shift working on non-tipped tasks and that, as a result, Defendants violated the FLSA and the NYLL by applying a tip credit to their wages.  (Pls. Rev. FF & CL, ¶ 179.)  The Court finds that Plaintiffs' testimony about the allocation of their time during their shifts was contradictory and implausible and, therefore, not credible.  At trial, Adonias testified that he spent at least 125 minutes (or 50 percent) of each shift on "side work" such as stocking new supplies and merchandise, cleaning the storefront, restocking beverages, and taking out the garbage.  (Pls. Rev. FF & CL, ¶¶ 19-26; Trial Tr. 187:16-191:23.)  This testimony is inconsistent with Adonias' deposition testimony, in which he stated that he spent somewhere between 80 and 99 percent of his time making deliveries.  (Trial Tr. 216:2-7.)  Similarly, G. Mercenario testified at trial that he spent the

_____

[2]     The paragraphs in Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law inexplicably begin renumbering after Paragraph 151 (see page 19 of the submission).  To avoid confusion, the Court will refer to paragraphs after Paragraph 151 based on a continued numbering scheme.  For example, what the Court refers to as "Paragraph 177," Plaintiffs have numbered paragraph 26 (see page 24 of the submission).

majority of his time completing non-tipped tasks.  (See Pls. Rev. FF & CL, ¶¶ 53-60; Trial Tr. 127:14-131:11.)  However, at his deposition, G. Mercenario testified that he was "busy all day making deliveries."  (Trial Tr. 149:15-24.)  Aranda testified that he completed his "side work" between 8:00 a.m. and 10:00 a.m., but the estimates he provided for each "side" task, when added together, far exceed two hours, rendering his testimony implausible.  (Id. 229:25-233:11.) H. Mercenario's testimony that he completed 20 deliveries per shift, each of which took between 15 and 25 minutes, cannot be reconciled with his testimony that he also typically spent two hours on non-tipped tasks.  (See id. 50:5-12, 51:15-17, 52:10-16.)  H. Mercenario's five-hour shift was not long enough to complete both the deliveries and the non-tipped work about which he testified.

The Court also finds that Plaintiffs' time estimates for completing non-tipped tasks were overstated and, therefore, unreliable.  For example, it is difficult to imagine how it would take 20 minutes to wash a 14-foot sidewalk or 20 minutes to clean the windows of a 14-foot-wide storefront.  (See Trial Tr. 231:24-232:6, 338:13-15.)  Similarly, the claim that Plaintiffs spent 30 to 40 minutes restocking a small four-foot-by-four-foot beverage refrigerator strains credulity.  (See id. 130:8-11, 347:17-23.)

The Court finds credible Pizzimenti's testimony that Defendants instructed Al Horno delivery workers not to perform any work other than deliveries.  (Trial Tr. 322:24-323:8.) Pizzimenti wanted to comply with tip credit requirements, which he knew prohibited applying the credit to employees who spent more than 20 percent of their shift on non-tipped duties.  (Id.) As a result, Pizzimenti had at least eight employees working at the 47th Street Restaurant in non-tipped capacities during a given shift, and those employees were solely responsible for performing the non-tipped tasks Plaintiffs described.  (Id. 342:6-349:22.)  Therefore, it is

implausible, as Plaintiffs claim, that "the 10 to 12 delivery people . . . spent the majority of their time doing work other than delivery." (Id. 148:14-18.) It is unlikely that it was necessary (or even possible in a 900-square-foot restaurant) for all 18 to 20 Al Horno employees working in the same store to perform the same non-tipped tasks. (See id. 280:20-281:3, 378:22-23.)

*Failure to Notify: Hours Worked*

Plaintiffs also assert that Defendants failed to notify them of their intention to apply a tip credit to their wages and that, therefore, Defendants were not permitted to pay Plaintiffs at the tip credit rate. (Pls. Rev. FF & CL, ¶ 180.) The Court finds their testimony credible in this regard. Defendants did not inform Plaintiffs at the time they were hired that their wages were subject to a tip credit. Defendants failed to provide Plaintiffs with notice of the amount of tip credit they intended to take (written in their primary language of Spanish) until some time into the Plaintiffs' respective employment.

**Adonias**

Adonias received tip credit notice on January 20, 2015, when Defendants first provided Adonias with his annual wage notice, which indicated that Defendants would take per hour allowances based on tips. (Trial Tr. 179:10-11; Defs. Trial Exhibit A-02.) Adonias received $5.00 per hour from May 2014 until October 3, 2014, and $5.65 per hour from October 3, 2014, until December 17, 2015. (Pls. Rev. FF & CL, ¶¶ 10-11.) From May 2014 until August 2014, Adonias worked five days per week from 11:00 a.m. to 3:00 p.m. (Id. ¶ 15; Trial Tr. 169:12-19.) From August 2014 until October 2015, Adonias worked six double shifts per week from 11:00 a.m. to 3:00 p.m. and from 5:00 p.m. to 10:00 p.m., which amounted to 14 overtime hours each week. (Pls. Rev. FF & CL, ¶ 16; Trial Tr. 169:22-170:9.) Adonias received $5.00 per overtime hour from August 2014 to October 2, 2014, and $9.65 per overtime hour from

October 3, 2014, to January 20, 2015.  (Trial Tr. 166:17-18; Defs. Trial Exhibit I-01; Pls. Rev. FF & CL, ¶¶ 10-11.)

### G. Mercenario

G. Mercenario received tip credit notice on February 14, 2015, when Defendants first provided him with his annual wage notice, which indicated that Defendants would take per hour allowances based on tips.  (Defs. Trial Exhibit B-01.)  G. Mercenario never received tip credit notice during his first employment period.  During his first employment period, from May 2014 until June 1, 2014, G. Mercenario worked from 10:00 a.m. until 3:00 p.m. seven days per week, making $5.00 per hour.  (Pls. Rev. FF & CL, ¶¶ 43-44; Trial Tr. 108:24-109:7.)  From June 1, 2014, until June 30, 2014, G. Mercenario worked from 10:00 a.m. until 3:00 p.m. six days per week.  (Id.)  G. Mercenario never worked more than 40 hours in a week.  (See Trial Tr. 109:14-22.)

### Aranda

Aranda first received tip credit notice on July 25, 2014, when Defendants initially provided Aranda with his annual wage notice, which indicated that Defendants would take per hour allowances based on tips.  (Defs. Trial Exhibit C-01.)  Between June 2014 and July 25, 2014, Aranda was paid $5.00 per hour, and worked six days per week.  (Trial Tr. 219:8-221:4; Pls. Rev. FF & CL, ¶¶ 80, 83.)  Aranda worked a double shift from 8:00 a.m. to 3:00 p.m. and from 6:00 p.m. to 10:00 p.m. for five days per week and from 10:00 a.m. to 10:00 p.m. one day each week.  (Pls. Rev. FF & CL, ¶ 80)  From June 2014 to July 25, 2014, Aranda worked 26 overtime hours each week and he received $5.00 per overtime hour.  (Trial Tr. 219:8-10, 220:16-19; Pls. Rev. FF & CL, ¶¶ 80, 83.)

### H. Mercenario

H. Mercenario received tip credit notice on July 25, 2014, when Defendants first provided him with his annual wage notice, which indicated that Defendants would take per hour allowances based on tips.  (Defs. Trial Exhibit D-01.)  Between June 17, 2014, and July 25, 2014, H. Mercenario was paid $5.00 per hour, and worked 10:00 a.m. to 3:00 p.m. five days a week.  (Trial Tr. 22:17-25; Pls. Rev. FF & CL, ¶¶ 115, 118.)

H. Mercenario testified at trial that he worked five days a week, from 10:00 a.m. to 3:00 p.m., 7:00 a.m. to 2:00 p.m., or 8:00 a.m. to 2:00 p.m. for the duration of his employment.  (Trial Tr. 25:17-27:2; Defendants' Revised Findings of Fact and Conclusions of Law ("Defs. Rev. FF & CL"), Docket Entry No. 50, ¶ 60.)  Based on this testimony, the Court finds that the most H. Mercenario may have worked in a week was 35 hours.  Therefore, H. Mercenario did not work any overtime hours and is not entitled to overtime compensation.

Spread of Hours or "SOH" Claims

Plaintiffs claim they are entitled to SOH pay under the NYCRR, which requires employers to pay one additional hour at the minimum wage rate when their employees work a spread of hours greater than ten.  (Pls. Rev. FF & CL, ¶ 185.)  Plaintiffs failed to tender credible, non-speculative proof that they were denied any SOH pay.

Beginning in August 2014, Adonias worked two shifts each day:  one from 11:00 a.m. to 3:00 p.m. and a second from 5:00 p.m. until 10:00 p.m.  (Trial Tr. 169:22-170:6.)  While Adonias testified that Defendants did not tell him he would receive SOH pay, he did not provide any evidence that Defendants actually failed to compensate him in accordance with the SOH regulation.  (See id. 183:17-21, 185:15-24.)

G. Mercenario asserts that Defendants did not properly compensate him for SOH pay until May 2015. (Pls. Rev. FF & CL, ¶ 65.) However, G. Mercenario did not testify that he was denied SOH payments; instead, he testified that he "never knew" whether he received a SOH payment. (See Trial Tr. 122:12-14.) Based on G. Mercenario's testimony regarding his work schedule and Defendants' pay stub records, it appears that G. Mercenario may not have been entitled to SOH pay prior to May 2015. (See Trial Tr. 111:7-15; see also Defs. Trial Exhibit J.)

Aranda offered only general testimony that he was never paid an extra hour when he worked more than ten hours in a single day (Trial Tr. 245:17-19); he provided no independent or specific evidence to support his claim.

H. Mercenario held a second job for the entire duration of his employment at the Restaurant, requiring him to complete his work before 3:00 p.m. each day. (Trial Tr. 70:19-71:4.) He did not credibly testify that he worked more than ten hours in a single day in the normal course. (See Trial Tr. 27:3-6.) Although documentary evidence proffered by Defendants indicates that, for a short period spanning from August 22, 2014, to October 15, 2014, H. Mercenario routinely worked over ten hours a day (see Defs. Trial Exhibits H-10-11), the Court finds credible H. Mercenario's testimony that, during that period, the computer would display an "error" message when he would attempt to "punch out" at the end of his shift. (Trial Tr. 73:24-74:2.) As he had a second job requiring him to complete his work before 3:00 p.m. each day, the Court finds that H. Mercenario did not actually work a spread of hours greater than ten during that period. (See Trial Tr. 75:8-11; Defs. Rev. FF & CL, ¶¶ 59, 61.)

Notice and Recordkeeping and Wage Statement Claims

Plaintiffs assert that Defendants violated the NYLL by failing to provide them with proper (i) notice of their wage rate and (ii) wage statements. (Pls. Rev. FF & CL, ¶¶ 34-39, 68-76, 106-10, 141-49.)

*Notice of Wage Rate*

The Court finds that Defendants failed to provide Plaintiffs with proper notice of their wage rate under the NYLL. The Court credits several aspects of Plaintiffs' testimony regarding Defendants' deficient wage notices. First, each Plaintiff testified that certain portions of the notice, such as the date or pay rate, were blank when he was asked to sign the wage notice. (Trial Tr. 54:22-55:13, 56:13-17, 118:2-18, 179:20-25, 238:22, 239:16-23.) Second, each Plaintiff (with the exception of Aranda) testified that he never received a copy of the wage notice. (Trial Tr. 56:16-19, 59:24-60:1, 118:19-20, 120:14-16, 179:3-19.) Third, each Plaintiff testified that he did not receive a wage notice until sometime after he began his employment with Al Horno. Adonias did not receive his wage notice until the beginning of 2015—more than six months after he started working. (Trial Tr. 179:10-11; Defs. Trial Exhibit A-02.) G. Mercenario did not receive an annual wage notice during his first period of employment with Al Horno; he first received a wage notice at the start of this second period of employment, which began in mid-February 2015. (See Defs. Trial Exhibit B-01.) Aranda and H. Mercenario both received their wage notices on July 25, 2014—more than one month after they started working for Al Horno. (See Defs. Trial Exhibits C-01 and D-01.)

*Wage Statements*

The Court finds that Defendants' wage statements suffered from deficiencies similar to those of the wage notices. The Court finds credible several aspects of Plaintiffs'

testimony regarding Defendants' wage statements.  First, Defendants did not provide, or allow Plaintiffs to retain, copies of their wage statements.  (Trial Tr. 61:11-12, 62:22-63:2, 120:24-121:1, 182:12-14, 243:2-4.)  Second, Plaintiffs did not begin receiving wage statements until October 3, 2014, at the earliest.  (See generally, Defs. Trial Exhibits I-L; Trial Tr. 60:9-62:14.) G. Mercenario did not receive wage statements until early 2015.  (See Defs. Trial Exhibit J-01.) Separately, G. Mercenario's wage statements were not always complete.  (Trial Tr. 121:2-8.)

Recovery of Equipment Costs or "Tools of the Trade" Claims

Plaintiffs assert claims for recovery of costs incurred in purchasing job-related equipment.  (Pls. Rev. FF & CL, ¶¶ 40, 77, 111-12, 150.)  According to Plaintiffs, the FLSA and the NYLL require Defendants to reimburse them for buying these so-called "tools of the trade." The Court finds that Plaintiffs provided credible, uncontradicted testimony regarding costs incurred in complying with Defendants' directions, requests, or expectations that they purchase certain equipment to perform their jobs.

The Court credits Adonias' testimony that, in connection with his employment with Al Horno, he bought a bicycle lock for $80 or $85, bicycle lights for $45, and a helmet for $75, and that a manager told him that he had to purchase these items.  (Trial Tr. 193:6-21.)  The Court also credits H. Mercenario's testimony that he spent $100 on a bicycle helmet and a vest after a manager told him those items were required.  (Id. 52:25-53:12.)  The Court also finds credible H. Mercenario's testimony that he expended his own money to replace a missing vest because he was told he "[had] to buy a vest" before he could return to work.  (Id. 96:7-14.)

<u>Unlawful Tip Deduction Claims</u>

Plaintiffs assert claims for unlawful deductions from tips in violation of the NYLL.  (Pls. Rev. FF & CL, ¶¶ 27-31, 61-64, 100-01, 131-38.)

*Catering Orders*

Plaintiffs all testified that they were routinely denied tips from large catering orders.  The Court does not find Plaintiffs' testimony regarding these large catering orders credible.  Plaintiffs' testimony regarding the regularity and value of Al Horno's catering orders was suspiciously similar.  According to Plaintiffs' collective testimony, the 47th Street Restaurant completed at least ten $1,000 catering orders every week.  That is not plausible.  The Restaurant was not equipped to fulfill catering orders of that size with that frequency.  (See Trial Tr. 351:9-352:6; Defs. Rev. FF & CL, ¶ 85.)  The Court credits Defendants' testimony that the 47th Street Restaurant only completed large catering orders once every one or two months, and that Defendants did not improperly withhold Plaintiffs' tips, but rather split tips among employees who actually participated in making the delivery.  (Trial Tr. 406:23-408:1; Defs. Rev. FF & CL, ¶¶ 86, 87.)

*Delivery Errors*

Each Plaintiff, with the exception of Aranda, testified almost identically that Defendants regularly deducted from their tips as punishment for mistaken or defective deliveries.[3]  (See Trial Tr. 37:9-38:18, 124:21-125:10, 175:18-176:6.)  Plaintiffs offered only general and speculative accounts of instances when Defendants withheld tips as punishment.  For example, G. Mercenario testified that he "never . . . [made] a mistake with a delivery" himself,

---

[3]     Aranda did not offer contrary testimony, he simply did not testify about deductions from tips as a method of punishment.

but nonetheless offered hypothetical testimony about what "would happen if other people made a mistake with deliveries." (Trial Tr. 125:2-10.) Plaintiffs failed to substantiate their claims with any reliable, concrete evidence. Accordingly, the Court does not credit Plaintiffs' testimony that Defendants made deductions from their tips as punishment for delivery errors.

*Pass-Through of Online Delivery Service Provider Surcharge*

Defendants proffered testimony that they deducted three percent from Plaintiffs' tip amounts to "pass along" processing fees Defendants incurred from credit card companies and online delivery service providers such as GrubHub and Seamless. (Trial Tr. 282:9-20, 284:1-25, 350:7-351:8; Defs. Rev. FF & CL, ¶ 55.) The three percent deduction was not a recovery of fees Defendants paid out of pocket; Defendants had never received that three percent in the first place. (Trial Tr. 282:15-20.) Plaintiffs did not offer any evidence regarding Defendants' "pass along" deduction.

Liquidated Damages

Plaintiffs assert that they are entitled to liquidated damages. The Court finds that Defendants undertook considerable effort to comply with federal and state wage-and-hour laws. (Defs. Rev. FF & CL, ¶¶ 16-25; Trial Tr. 317:5-324:22.) Defendant Pizzimenti conducted his own independent research of applicable wage and hour laws and regulations by obtaining a PACER account and reviewing relevant court decisions. (Defs. Rev. FF & CL, ¶ 17.) Pizzimenti also contacted representatives of the New York State and United States Departments of Labor "concerning employer obligations." (Id. ¶ 18.) Pizzimenti also retained legal counsel to provide advice concerning compliance with wage-and-hour laws. (Id. ¶ 19.) And Pizzimenti endeavored to implement what he learned by training Restaurant managers on what he believed to be proper compliance. (Id. ¶ 20; Trial Tr. 322:3-324:22.) The Court finds credible

Pizzimenti's testimony that he believed he was properly applying a tip credit to his employees' wages.  (Trial Tr. 359:14-17.)

C<small>ONCLUSIONS OF</small> L<small>AW</small>

Having made the necessary factual findings, the Court now turns to the parties' legal contentions.

A.  Violations of the Minimum Wage and Overtime Provisions of the FLSA and NYLL
    (First through Fourth Causes of Action)

Plaintiffs' first four causes of action are related, as each asserts that Defendants paid Plaintiffs insufficient wages.  The Court will address these claims together.

The FLSA minimum wage and overtime provisions apply to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce . . . or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce."  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (alteration in original) (citation omitted); see also 29 U.S.C.S. §§ 206(a), 207(a) (LexisNexis 2010).

Under the FLSA, an employee bears the burden of proving that he was not properly compensated for his work.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946) (superseded on other grounds).  The employee can do so by obtaining and producing her employer's records.  See id. at 687.  However, when "the employer's records are inaccurate or inadequate" and "the employee cannot offer convincing substitutes," the employee can meet her burden of proof if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed . . . ."  Id.  If the employer fails to do so, "the court may then award damages to the employee, even though the

result be only approximate." Id. at 688; see also Liu v. Jen Chu Fashion Corp., No. 00-CV-422 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) ("[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct."); Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) ("Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered.")

The NYLL applies a similar framework to unpaid compensation claims, except that Section 196-a provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" Gamero, 272 F. Supp. 3d at 498 (quoting NYLL § 196-a(a)). The Defendants' burden under the NYLL is "more demanding." Id.

While the FLSA and the NYLL impose "similar requirements," a plaintiff cannot recover unpaid wages under both statutes. Id.

*Tip-Credit Provision*

Under "'[b]oth the FLSA and the NYLL,'" an employer may "'pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage[,]'" and "'[t]his allowance against the minimum cash wage is known as a 'tip credit.'" Gamero, 272 F. Supp. 3d at 500 (quoting Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)). Under both the FLSA and the NYLL, the burden is on the employer to show that they have complied with the tip credit requirements. Valle v. Gordon Chen's Kitchen LLC, 254 F.

Supp. 3d 665, 672-73 (S.D.N.Y. 2017).  However, employers must fulfill requirements that differ slightly between the FLSA and the NYLL.

### FLSA Tip-Credit Provisions

Under the FLSA, a "tipped employee" is "'any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips[,]'" and a "'court[] must determine whether the employee's job is historically a tipped occupation and whether he has more than 'de minimis' interaction with customers as a part of his employment.'" Gamero, 272 F. Supp. 3d at 500 (quoting 29 U.S.C. § 203(t) and Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442, 467. (S.D.N.Y. 2015)).

The FLSA precludes employers from applying a tip credit to wages of "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." Mendez v. Int'l Food House Inc., No. 13-CV-2651 (JPO), 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014) (citations and quotations omitted).  This provision is sometimes referred to as the "80/20 Rule."  See id.

FLSA also precludes employers from applying a tip credit against an employee's wages unless the employer has informed the employee of the statute's tip credit provisions and the employee retains all of the tips he or she receives.  Gamero, 272 F. Supp.3d at 500.  Such notice need not be provided in writing, but it must notify employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.  Id. at 501; Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (same).

**NYLL Tip-Credit Provisions**

Under the NYLL, a "tipped employee" is defined as "a service employee or food service worker [who] receives enough tips and . . . has been notified of the tip credit as required in section 146-2.2 of [Title 12 of the NYCRR]."  12 NYCRR § 146-1.3.  Like the FLSA, the NYLL has an "80/20 Rule," which precludes an employer from applying the tip credit to employees who spend "2 hours or more or . . . more than 20 percent of her or his shift" completing work "in which tips are not customarily received."  12 NYCRR §§ 146–3.3, 146–1.3.  The NYLL also has a notice requirement, but unlike the FLSA's notice requirement, the NYLL requires the employer seeking a tip credit to notify the employee in writing, in the employee's "primary language."  12 NYCRR § 146-2.2(a)(2); <u>Gamero</u>, 272 F. Supp. 3d at 501.

*Plaintiffs' "80/20" Claim*

The Court concludes that Plaintiffs failed to provide credible proof to support a finding based on the "80/20 Rule" that Defendants were not entitled to apply a "tip credit."  As stated in the Findings of Fact above, the Court finds implausible Plaintiffs' testimony that they spent more than 20 percent of each shift performing non-tipped duties, such as washing windows and refilling supplies.  Their testimony was similar in a way that suggests a lack of trustworthiness.  Plaintiffs' time estimates were overstated and contradictory of their testimony regarding time required to complete their deliveries.  The Court credits the Defendants' evidence that Plaintiffs were instructed not to perform non-tipped tasks while working at Al Horno, and that those tasks were reserved for the eight or more non-tipped employees Pizzimenti had hired specifically for that purpose.  Plaintiffs' testimony regarding time spent on non-tipped tasks was contradictory and inconsistent; therefore, Plaintiffs failed to prove that Defendants violated the minimum wage laws based on the "80/20 Rule" of the FLSA and the NYLL.

*Plaintiffs' "Failure to Notify" Claim*

The Court finds that, for a portion of each Plaintiff's employment, Defendants were not entitled to apply tip credits to Plaintiffs' wages because they did not comply with the notice requirement under the FLSA and the NYLL. Gamero, 272 F. Supp. 3d at 505. Specifically, Defendants failed to provide credible evidence that they properly notified Plaintiffs of (i) FLSA's tip-credit provision, and (ii) the amount of tip credit they took from Plaintiffs' basic minimum hourly and overtime rates, in writing in Plaintiffs' primary language. 29 U.S.C.S. §203(m) (LexisNexis 2013); 12 NYCRR 146-2.2. Defendants are liable under both the FLSA and the NYLL[4] for Plaintiffs' unpaid minimum and, where applicable, overtime wages without a tip credit allowance as follows:

### Adonias

The Court finds that Adonias is entitled to the difference between (i) the statutory minimum and overtime wage rates[5] in effect from May 15, 2014 (when Adonias first started working at Al Horno), to January 20, 2015 (when Adonias first received requisite notice of Defendants' tip credit), and (ii) the wages he actually received during that time period. The

---

[4]     Although Defendants are liable under both statutes, Plaintiffs are only entitled to damages under one statute. See Gamero, 272 F. Supp. 3d at 498. The Court has discretion to award Plaintiffs damages under "the statute providing the greatest amount of relief." Id. (citation omitted). As New York's minimum wage was higher than the federal minimum wage during the relevant time period, "Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA." Hernandez v. Jrpac Inc., No. 14-CV-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016). Therefore, the Court will calculate Plaintiffs' recovery based on the difference between the wages Plaintiffs actually received and the New York state minimum wage in effect at the time.

[5]     The New York state minimum wage was $8.00 between January 1, 2014, and December 31, 2014, and $8.75 between January 1, 2015, and January 20, 2015. N.Y. Lab. Law § 652.

difference between the statutory wages and the wages Adonias received is $2,886.85 ($1,441.95 for minimum wages plus $1,444.90 for overtime wages).

### G. Mercenario

The Court finds that G. Mercenario is entitled to recover the difference between (i) the statutory minimum wage rates in effect from May 15, 2014, to June 30, 2014 (G. Mercenario's first period of employment with Al Horno, during which he worked without receiving the requisite notice of Defendants' tip credit), and (ii) the wages he actually received during that time period. The difference between the statutory wages and the wages G. Mercenario received is $570.

### Aranda

The Court finds that Aranda is entitled to difference between (i) the statutory minimum and overtime wage rates in effect from June 15, 2014 (when Aranda began working at Al Horno), to July 25, 2014 (when Aranda first received the requisite notice of Defendants' tip credit), and (ii) the wages he actually received during that time period. The difference between the statutory wages and the wages Aranda received is $1,545 ($600 for minimum wages and $945 for overtime wages).

### H. Mercenario

The Court finds that H. Mercenario is entitled to the difference between (i) the statutory minimum wage rate in effect from June 17, 2014 (when H. Mercenario began working at Al Horno), to July 25, 2014 (when H. Mercenario first received the requisite notice of Defendants' tip credit), and (ii) the wages actually received during that time period. The difference between the statutory wages and the wages H. Mercenario received is $375.

## B.  Violation of the Spread of Hours Wage Order of the N.Y. Commission of Labor (Fifth Cause of Action)

"New York law requires that on each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." Cabrera v. Schafer, 222 F. Supp. 3d 250, 255 (E.D.N.Y. 2016) (citing 12 NYCRR § 146–1.6 (a) (2011)) (internal quotation marks omitted).  Under the law, "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday."  12 NYCRR § 146–1.6.  The "spread of hours" includes "working time plus time off for meals plus intervals off duty."  Id.  For example, an employee who works from 8:00 a.m. to 12:00 p.m. and then again from 4:00 p.m. to 8:00 p.m. would be entitled to receive at least nine hours of pay at the minimum wage rate.

At trial, Plaintiffs failed to prove that they are entitled to recover SOH pay.  While Adonias, G. Mercenario, and Aranda each worked shifts with spreads of hours greater than ten, none of them provided credible evidence to support his claim that he was not properly compensated.  Adonias testified that Defendants did not tell him that he would receive SOH pay, but he provided no credible evidence that Defendants actually denied him SOH pay.  The same is true of Aranda.  G. Mercenario's testimony that he "never knew" whether Defendants paid him a SOH rate is too vague and unreliable to support a finding of liability.  Lastly, H. Mercenario testified that he held another job, which required him to leave Al Horno by 3:00 p.m. every day, and, because the earliest he started work was 7:00 a.m., the spread of hours he worked could not have exceeded ten.  (Trial Tr. 25:17-27:2, 70:19-71:4; Defs. Rev. FF & CL, ¶ 60.)  Therefore, the Court finds that Plaintiffs fail to prove that they are entitled to recover SOH wages.

C. Violations of the Notice, Recordkeeping, and
   Wage Statement Requirements of the NYLL
   <u>(Sixth and Seventh Causes of Action)</u>

Plaintiffs assert two causes of action for violations of the NYLL's notice, recordkeeping, and wage statement requirements.

*Notice of Wage Rate*

The NYLL, through the Wage Theft Prevention Act (or "WPTA"), requires employers to provide each employee with a written notice of (i) the employee's rate of pay; (ii) the overtime rate of pay; (iii) the basis for the employee's pay (<u>e.g.</u>, hourly, daily, weekly, salary, commission, and so forth); (iv) all allowances claimed as part of the minimum wage (<u>e.g.</u>, tips, meals, or lodging allowances); (v) the employee's regular pay day; (vi) the name of the employer, including whether the employer is "doing business as" under any other name; (vii) the employer's address; and (viii) the employer's telephone number.  N.Y. Lab. Law § 195(1)(a). Such notice must be provided "within ten business days of the start of employment."  <u>Kone v. Joy Constr. Corp.</u>, No. 15-CV-01328 (LTS), 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016) (internal quotation marks and citation omitted).  The written notice must also be provided in English and the employee's primary language.  N.Y. Lab. Law § 195(1)(a).  Pursuant to a 2014 amendment to the WTPA, an employer who fails to provide notices at the time of hiring is liable for a maximum of $5,000, accruing at a rate of $50 for each day not received.  N.Y. Lab. Law § 198(1-b); <u>see also</u> <u>Java v. El Aguila Bar Rest. Corp.</u>, No. 16-CV-06691 (JLC), 2018 WL 1953186, at *12 (S.D.N.Y. Apr. 25, 2018)  ("Since February 27, 2015, an employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000.").  Before the 2014 amendment, from April 9, 2011, through February 26, 2015,

employers were liable for $50 each week the wage notice was not provided, with a maximum penalty of $2,500. Demirovic v. Ortega, No. 15-CV-00327 (CLP), 2018 WL 1935981, at *6 (E.D.N.Y. Apr. 24, 2018). Courts in this Circuit have "held that the amendment should not be given retroactive effect." Id. (citation omitted). Plaintiffs cite both the pre- and post-2014 amendment in their Revised Conclusions of Law and do not specify which amendment they seek to apply to which Plaintiff's claim. (See Pls. Rev. FF & CL, ¶¶ 202, 205.)

The Court finds credible each Plaintiff's testimony that Defendants did not provide him with the written notice of his rate of pay, overtime rate of pay, the basis for his pay, all allowances claimed as part of the minimum wage, his regular pay day, and Al Horno's name, address, and telephone number, in both English and Spanish, at the time he was hired. The Court also credits each Plaintiff's testimony that Defendants left crucial elements of the notices blank when Plaintiffs were asked to sign them. Furthermore, Spanish is the native language of each of the four Plaintiffs, and Defendants have not proffered credible evidence that any of them was provided with wage notices in Spanish. Accordingly, each Plaintiff is entitled to recover $5,000, as each Plaintiff was not properly provided notice for a number of workdays that, when multiplied by $50 per day, far exceeds the statutory maximum of possible liability of $5,000. Defendants also failed to comply with the annual notice requirements before February 27, 2015, as each Plaintiff began employment with Al Horno in 2014 and worked various lengths of time prior to February 27, 2015.

Defendants argue in the alternative that, "even if the signed wage forms are found to be insufficient," they cannot be held liable for a "mere technical violation of the notice provision" under NYLL Sections 198(1-b) and (1-d) because the "documentary and testimonial evidence [here] clearly demonstrate that [P]laintiffs were always paid an amount equal to or

above the minimum wage for every single shift during their employment," and the statute provides that it is an affirmative defense to NYLL Sections 198(1-b) and (1-d) if an employer made complete and timely payment of all wages due. (Defs. Rev. FF & CL, ¶¶ 105-07 (citing Ahmed v. Morgans Hotel Group Mgt., LLC, 2017 N.Y. Misc. LEXIS 638 (N.Y. Sup. Ct. (N.Y. County) 2017) (emphasis in original).) Though Defendants are correct that the "complete and timely payment of all wages due" is an affirmative defense to notice and recordkeeping violations, the Court finds, after considering the totality of the documentary and testimonial evidence in this case, that Defendants have not demonstrated sufficiently that they "made complete and timely payment of all wages due," largely for the reasons discussed supra. Therefore, Defendants cannot avail themselves of the affirmative defense to Plaintiffs' claims made pursuant to Sections 198(1-b) and (1-d) of the New York Labor Law.

Thus, Adonias, G. Mercenario, Aranda, and H. Mercenario are each entitled to the full cumulative statutory maximum award of $5,000 for Defendants' failure to provide him with written notice of his rate of pay.

*Wage Statement Requirement*

New York law also requires employers to provide a statement with each payment of wages containing (i) the dates the payment of wages covers; (ii) the name of both the employee and employer; (iii) the employer's address and telephone number; (iv) the rate and basis of pay; (v) gross wages; (vi) deductions; (vii) allowances (if applicable); and (viii) net wages. N.Y. Lab. Law §195(3). "Until February 27, 2015, an employer's failure to provide proper wage statements was a violation for which plaintiffs could receive $100 per work week in damages, with a cap of $2,500." Gamero, 272 F. Supp. 3d at 511 (internal quotation marks omitted). Following the 2014 amendment to the WTPA, an employer who fails to provide the

required wage statement is liable to the employee for $250 per each day that the violation occurs, up to a maximum of $5,000, together with costs and reasonable attorneys' fees.  N.Y. Lab. Law §198(1-d).  "Employers who fail to furnish any sort of wage statement are liable under the statute, as are 'employers who fail to comply with all of Section 195(3)'s enumerated requirements.'"  <u>Gamero</u>, 272 F. Supp. 3d at 511 (quoting <u>Severino v. 436 W. L.L.C.</u>, No. 13-CV-03096 (VSB), 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015)) (internal ellipses and brackets omitted).

In its Findings of Fact, the Court determined that each Plaintiff was not properly provided with wage statements during the duration of his employment, as Defendants failed to comply with all of Section 195(3)'s enumerated requirements, including that an employee be provided with a copy of his wage statement.  <u>See</u> <u>Gamero</u>, 272 F. Supp. 3d at 511; <u>Severino</u>, 2015 WL 12559893, at *9.  Because each Plaintiff worked at Al Horno for more than 20 days following the 2014 amendment's effective date, Defendants' liability exceeds the statutory maximum liability of $5,000.

Accordingly, Adonias, G. Mercenario, Aranda, and H. Mercenario are each entitled to the full cumulative statutory maximum award of $5,000 for Defendants' failure to provide him with his wage statements, as required by New York law.[6]

---

[6]     While decisions in this District suggest that plaintiffs who bring claims under NYLL Sections 195(1) and (3) for conduct both before and after the 2014 amendment are not entitled to recover beyond the $5,000 maximum, <u>see</u>, <u>e.g.</u>, <u>Reyes v. Lincoln Deli Grocery Corp.</u>, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *1, 7 (S.D.N.Y. June 5, 2018), the Court need not reach this question, as Plaintiffs seek only $5,000 damages for their wage notice and wage statement claims, rather than a combined $7,500 in statutory damages. (<u>See</u> Pls. Rev. FF & CL, ¶¶ 215-16, 221-22, 227-28, 233-34.)

D. Recovery of Costs of Equipment or "Tools of the Trade"
   (Eighth Cause of Action)

Federal regulations provide that employees' wages must be "paid by the employer and received by the employee . . . 'free and clear'" of "'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit."  29 C.F.R. § 531.35.  An employer who requires "that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work" would violate the FLSA "in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."  Id.  "Such 'kicks-back' include expenses employees incur when they are required to purchase and maintain bicycles for delivery jobs."  He v. Home on 8th Corp., No. 09-CV-05630 (GBD), 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) (citing Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008)).  New York regulations similarly provide that an employee's "minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."  Id. (quotations omitted).  Employees may be entitled to compensation for expenses incurred when their employer simply "expect[s]," rather than "expressly require[s]," the employee to purchase items necessary to perform the employee's job.  Id.

The Court finds that Plaintiffs testified credibly regarding their "tools of the trade" claims.  The Court concludes that, because Plaintiffs' wage rate statements show that they were paid at or below the minimum wage, any expenses incurred by Plaintiffs reduced their wages below the statutory minimum for the week during which the expenses were incurred.  (See generally, Defs. Trial Exhibits I-L.)  The Court credits Adonias' testimony that he purchased a bicycle light for $45, a bicycle lock for $80, and a helmet for $75 because his manager instructed him to purchase those items for his work at Al Horno.  Therefore, the Court finds that Adonias is

entitled to $200 as compensation for the equipment costs associated with the bicycle light, the lock, and the helmet.

The Court further finds that H. Mercenario spent $100 on a bicycle helmet and a vest after Defendants instructed him to purchase those items. Although Defendants initially gave H. Mercenario a vest to use, it went missing, and Defendants told H. Mercenario that he could not return to work until he purchased a replacement vest. Therefore, the Court finds that H. Mercenario is entitled to $100 to compensate him for costs incurred buying equipment he was required and expected to own.[7]

E. Unlawful Deductions from Tips in Violation of the NYLL
   (Ninth Cause of Action)

Plaintiffs contend that Defendants unlawfully deducted from their tips in violation of NYLL Section 196-d; specifically, Plaintiffs claim that Defendants unlawfully withheld portions of tips (i) received in connection with large catering orders, and (ii) as punishment for Plaintiffs' errors. NYLL Section 196-d provides that "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d. Because Plaintiffs have failed to prove that Defendants unlawfully withheld their tips in violation the NYLL, the Court finds in favor of Defendants on Plaintiffs' Ninth Cause of Action.

*Catering Orders*

At trial, Plaintiffs provided nearly identical testimony regarding the frequency with which they completed large catering orders and Defendants' alleged practice of withholding

---

[7]     Plaintiffs Adonias, G. Mercenario, and Aranda also testified that they had purchased other items, either before or during their Al Horno employment, but none testified that they had done so at the behest, or in light of a requirement or expectation, of Defendants.

tips from those orders.  The Court finds Plaintiffs' evidence implausible.  It would have been

impossible for Al Horno to, as Plaintiffs claim, produce eight or more $1,000 catering orders

each week.  As Defendants point out, the store in which Plaintiffs worked—the 47th Street

Restaurant—is simply too small to sustain those production demands.  Moreover, Plaintiffs

failed to provide any specific or credible evidence showing that Defendants withheld tips for

purposes other than to share among the group of employees who actually assisted in delivering

the order.  For these reasons, the Court concludes that Plaintiffs fail to prove that Defendants

unlawfully withheld tips from large catering orders.

### Tip Deductions as Punishment

Plaintiffs Adonias, G. Mercenario, and H. Mercenario also claim generally that

Defendants withheld portions of their tips as punishment for errors in deliveries.  But, again,

Plaintiffs fail to substantiate these claims with any credible, specific evidence.  The Court finds

Plaintiffs' vague testimony about "what would happen" if employees made mistakes in

delivering orders insufficient to prove that Plaintiffs' tips were unlawfully withheld on that basis.

(See Trial Tr. 125:5-10.)

### Online Delivery Service Provider Surcharge

Defendants also argue that they were entitled to collect credit card and third-party

processing fees from Plaintiffs' tip amounts.  Employers are not liable for tip withholding under

Section 196-d when they pass along commissions paid to online delivery services like Seamless.

Gamero, 272 F. Supp. 3d at 512-15.  Employers are "under no obligation to refund [employees]

for the fees the restaurant needed to pay in order for Seamless [or other online delivery service

providers] to process Plaintiffs' tips."  Id. at 513.

The Court credits Pizzimenti's testimony that Defendants were required to pay online delivery service providers, such as GrubHub and Seamless, a three percent service fee. (See Trial Tr. 350:7-351:8; Defs. Rev. FF & CL, ¶ 55.)  The Court also finds credible Defendants' testimony that they did not retain any of Plaintiffs' tips, but rather "passed along" the fees they incurred.  (Defs. Rev. FF & CL, ¶ 55.)  Defendants were not obligated to refund these fees to Plaintiffs.  Gamero, 272 F. Supp. 3d at 513.  Defendants were only obligated to give Plaintiffs the full balance of their tips, less any third-party service providers' commissions.  Id. at 513-14.  That is precisely what the evidence shows Defendants did.  Therefore, the Court concludes that Defendants' three percent "pass-through" of third-party service provider fees was not an impermissible tip withholding under NYLL Section 196-d.

F.  Liquidated Damages

An employee entitled to recover unpaid wages may recover liquidated damages under the FLSA or the NYLL.  See 29 U.S.C.S. § 216(b) (LexisNexis 2010), N.Y. Lab. Law § 198(1-a).  "Courts have not substantively distinguished the federal standard from the current state standard."  Inclan, 95 F. Supp. 3d at 505.  Under the FLSA, "a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages for violations of the FLSA's minimum wage and overtime provisions" (id. at 504) (internal quotation marks omitted), unless the employer shows "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . ."  29 U.S.C.S. § 260 (LexisNexis 2010).  Similarly, under the NYLL, any employee who is entitled to recover unpaid wages is also entitled to recover liquidated damages, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).  The

NYLL authorizes liquidated damages "'amounting to 100% of the total unpaid wages for violations.'" <u>Gamero</u>, 272 F. Supp. 3d at 503 (quoting <u>China 1221, Inc.</u>, 2016 WL 1587242, at *3).

The Court credits Defendants' testimony regarding their efforts to comply fully with all applicable wage-and-hour laws. Because Defendants expended considerable effort and resources investigating and seeking advice concerning the relevant labor laws and because, based on the results of that investigation and advice, Defendants believed that they were in compliance with those laws, the Court finds that Defendants had a good faith basis for believing they were not violating the FLSA and the NYLL. Therefore, the Court denies Plaintiffs' request for liquidated damages.

G. <u>Prejudgment Interest</u>

Plaintiffs are entitled to recover prejudgment interest on their unpaid wages under the NYLL, which is set at nine percent per year. N.Y.C.P.L.R. § 5004. The Court has discretion to choose a date from which prejudgment interest should accrue. <u>Santana v. Latino Express Restaurants, Inc.</u>, 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016). Courts "often choose the midpoint of the plaintiff's employment within the limitations period." <u>Gamero</u>, 272 F. Supp. 3d at 515 (internal quotation marks omitted). The Court finds that use of a midpoint is appropriate in this case. Therefore, Plaintiffs are awarded prejudgment interest on their unpaid wage claims at a nine percent annual rate as follows:

*Adonias*

The midpoint of Adonias' employment (from May 15, 2014, to August 19, 2016) is July 1, 2015. Therefore, Adonias is awarded prejudgment interest at a nine percent annual rate

on the principal amount of $2,886.85 for the period of July 1, 2015, through the date judgment is entered.

*G. Mercenario*

The midpoint of G. Mercenario's overall employment period (from May 15, 2014, to July 1, 2016) is June 8, 2015. Therefore, G. Mercenario is awarded prejudgment interest at a nine percent annual rate on the principal amount of $570 for the period of June 8, 2015, through the date judgment is entered.

*Aranda*

The midpoint of Aranda's employment (from June 15, 2014, to September 20, 2016) is August 3, 2015. Therefore, Aranda is awarded prejudgment interest at a nine percent annual rate on the principal amount of $1,545 for the period of August 3, 2015, through the date judgment is entered.

*H. Mercenario*

The midpoint of H. Mercenario's employment (from June 17, 2014, to July 2, 2016) is June 25, 2015. Therefore, H. Mercenario is awarded prejudgment interest at a nine percent annual rate on the principal amount of $375 for the period of June 25, 2015, through the date judgment is entered.

CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have proven by a preponderance of the evidence that they are entitled to recover pursuant to their First through Fourth, Sixth, Seventh, and Eighth Causes of Action in the manner set forth above. Plaintiffs have failed to sustain their burden of proof as to the Fifth and Ninth Causes of Action. The Clerk

of Court is directed to enter a judgment reflecting the Court's holding and setting forth Plaintiffs' damages as follows:

Adonias: $2,886.85 in unpaid wages under the NYLL, with nine percent prejudgment interest from July 1, 2015, through the date of judgment ($817.18); $5,000 for Defendants' violation of NYLL § 195(1); $5,000 for Defendants' violation of NYLL § 195(3); and $200 for recovery of equipment costs under the FLSA.

G. Mercenario: $570.00 in unpaid wages under the NYLL, with nine percent prejudgment interest from June 8, 2015, through the date of judgment ($164.58); $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

Aranda: $1,545.00 in unpaid wages under the NYLL, with nine percent prejudgment interest from August 3, 2015, through the date of judgment ($424.77); $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

H. Mercenario: $375.00 in unpaid wages under the NYLL, with nine percent prejudgment interest from June 25, 2015, through the date of judgment ($106.71); $5,000 for Defendants' violation of NYLL § 195(1); $5,000 for Defendants' violation of NYLL § 195(3); and $100 for recovery of equipment costs under the FLSA.

Plaintiffs are entitled to recover attorneys' fees, costs, and expenses under the FLSA and the NYLL. See 29 U.S.C.S. § 216(b) (LexisNexis 2010); N.Y. Lab. Law §§ 198, 663(1). Plaintiffs are directed to make their motion for attorneys' fees and expenses pursuant to

Federal Rule of Civil Procedure 54(d) no later than 14 days following the entry of judgment.

Defendants are directed to file their opposition papers, if any, within 14 days thereafter. Costs

shall be taxed in accordance with Federal Rule of Civil Procedure 54(d).

    The Clerk of Court is directed to close this case.


    SO ORDERED.


Dated: New York, New York
   August 22, 2018


          /s/ Laura Taylor Swain
          LAURA TAYLOR SWAIN
          United States District Judge